SOUTHERN GAS & GASOLINE ENGINE CO. v. PEVETO.

(Court of Civil Appeals of Texas. Galveston. June 20, 1912. Rehearing Denied Oct. 10, 1912.)

1. JUDGMENT (§ 711*) — CONCLUSIVENESS — PARTIES.

In an action by a buyer of machinery to recover cash paid on the price and an amount due on a judgment rendered against him by an innocent purchaser to whom defendant seller sold notes given for part of the price, it is no objection that defendant was not a party to such judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1232; Dec. Dig. § 711.*]

2. SALES (§ 442*)—BREACH OF WARRANTY— RIGHTS OF BUYER.

Though an engine proved to be worthless for the purpose for which it was sold, the buyer is not entitled to recover on account of a judgment obtained against him by an innocent purchaser to whom defendant seller sold notes given for part of the price until the judgment is actually paid.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1284–1301; Dec. Dig. § 442.*]

3. SALES (§ 423*)—CONDITIONS—VALIDITY.

In an action by a buyer of an engine to recover cash paid on the price and an amount due on a judgment rendered against him by an innocent purchaser to whom defendant seller sold notes given for part of the price, on the ground that the engine was worthless for the purpose for which it was sold, judgment in the buyer's favor may properly award him the amount remaining due on the first-mentioned judgment, on condition that no execution shall issue until he files with the clerk proper receipt or certificate of the clerk of the court in which the first-mentioned judgment was rendered, showing that he has paid or satisfied the same.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1205; Dec. Dig. § 423.*]

4. SALES (§§ 120, 423, 442*)—RESCISSION BY BUYER.

If an engine was worthless for the purpose for which it was known to the seller to have been purchased, the buyer, on discovering that fact, and on promptly tendering return of the engine, is entitled to rescission, and to recover payment of the price, and to have such purchase-money notes as still remain in the hands of the seller canceled, and can also recover, under certain circumstances, such consequential damages as he has suffered through breach of warranty, express or implied, if they were in the contemplation of the parties at the time of the sale, but, if the engine is not promptly tendered back, the buyer's measure of damages is the difference between its market value and the market value of such an engine as it was represented to be, together with such consequential damages.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 294, 1205, 1284–1301; Dec. Dig. §§ 120, 423, 442.*]

5. SALES (§ 442*)—BREACH OF WARRANTY— DAMAGES—ELEMENTS.

On breach of a warranty that an engine was capable of pumping water for irrigation purposes, the buyer is not entitled to recover as damages the amount of damage resulting to a crop put in by tenants under agreement that he should furnish the water for the crop, on the theory that he had become liable to them for loss under his contract with them; he not being legally so liable.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1284–1301; Dec. Dig. § 442.*]

6. SALES (§ 413*)—VARIANCE.

There is a variance in suit by a buyer in which he pleads breach of verbal representations and warranties, where the proof shows a written contract, set up by defendant seller, which the buyer claimed he signed in ignorance of its contents, and through fraud practiced by the seller's agent.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1166–1169; Dec. Dig. § 413.*]

7. SALES (§ 434*)—BREACH OF WARRANTY— DAMAGES—PLEADING.

In an action against a seller of an engine which a buyer claims was worthless for irrigation purposes for which it was sold, in order that recovery may be had for loss of an additional crop which might have been raised if plaintiff buyer had been able to supply water, the petition should show the cost of gathering and preparing for market such crop.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1234–1238; Dec. Dig. § 434.*]

8. SALES (§ 440*)—BREACH OF WARRANTY— EVIDENCE.

On an issue as to the efficiency of a gasoline engine which was sold for irrigation purposes, it was proper to show the horse power developable by the engine by showing that a 15 horse power steam engine developed as much power as was shown by the gasoline engine which was sold under representation that it would develop 50 horse power.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1261–1276; Dec. Dig. § 440.*]

Appeal from District Court, Orange County; W. B. Powell, Judge.

Action by S. H. Peveto against the Southern Gas & Gasoline Engine Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Lewis R. Bryan, of Houston, for appellant. Holland & Holland, of Orange, for appellee.

REESE, J. Alleging in his petition that the Southern Gas & Gasoline Engine Company had sold him a certain gasoline engine for the purpose of pumping water from his artesian well to water the rice on his own land and other land contiguous thereto, the plaintiff, S. H. Peveto, brings this suit against said engine company to recover damages alleged to have been suffered by him on account of the failure of the engine to come up to the requirements of the representations and guaranties of defendant as to the amount of water it was capable of raising, in consequence of which on account of deficiency of water the crops of rice were damaged. It was further alleged that the engine was worthless for the work which it was understood it was to do; that it was tendered back to defendant, who refused to receive it. Plaintiff sought to recover, first, the amount of the cash payment he had made on the engine; second, the balance due on a certain

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

judgment recovered against him by an innocent purchaser to whom defendant had sold the notes given for the credit payment, part of said judgment having been satisfied by an execution sale of the engine; third, certain expenses to which he had been put in moving and installing the engine; and, fourth, the value of the crop of rice planted on the land which would have been produced if the engine had been as represented. On trial with a jury under the charge of the court the jury returned a verdict for plaintiff for each of the items of damage claimed amounting in the aggregate to $3,298.55. A remittitur of $212.40 was filed, and a judgment rendered for $3,086.15, from which defendant appeals.

The assignments of error present certain questions which will be passed upon without following the order of the assignments or discussing the several propositions in detail. This opinion will be sufficient to indicate the reasons of our reversal of the judgment as required by the statute. R. S. art. 1039. The appellee relied upon a verbal contract between himself and the agent of appellant, by the terms of which the engine was guaranteed to furnish (by pumping from appellee's artesian well) sufficient water to water 300 acres of rice. Appellant pleaded that the only contract between the parties was in writing, a copy of which was attached to its answer, by the terms of which appellant only guaranteed that the engine should be 50 horse power. The court in the charge to the jury instructed them that this written contract was the only contract between the parties, and, that, if the engine was 50 horse power, they should return a verdict for defendant. The jury was instructed that if they found for plaintiff on this issue, and that the engine was worthless for the purposes for which it was being used and for which it was purchased, they should return a verdict for plaintiff, allowing him the sum of $576, being the amount of the cash payment made by him, also $674, being the unpaid balance due upon the judgment aforesaid, with interest upon both amounts. Complaint is made in several ways by the assignments of error that appellee was not entitled to recover in any event the amount unpaid upon this judgment.

[1, 2] The facts as to this are that, when the engine was sold, appellee paid in cash $576 and gave his negotiable promissory notes for the balance. These notes were by appellant transferred regularly before maturity to the First National Bank of Springfield, Ohio, which afterwards sued appellee and obtained judgment on the notes for $1,-199.50. The bank was an innocent purchaser for value, and appellee's defense to the notes unavailable as against it. Execution was issued on this judgment under which the engine was sold, leaving a balance still due of $674.50. Appellee sought to recover this sum along with the cash paid, upon the theory that the engine was worthless for the purpose for which it had been sold, and that, as soon as this was discovered, he had tendered it back to appellant. It is no objection to this judgment, as appellee sought to use it, that appellant was not a party to it. The question is whether appellee could recover the amount of the judgment as part of the purchase price paid without actual payment or satisfaction of the judgment. Upon this question we find much difficulty in arriving at a satisfactory conclusion from the authorities, which, so far as we have been able to find, are meager, and not in harmony. Our conclusion is that, until the balance of this judgment is actually paid, appellee is not entitled to be compensated for the same. The mere establishing of the liability therefor, as by a judgment which he may never pay, does not entitle him to recover the amount as for damages actually sustained, which is all he is entitled to recover. Sedgwick, Dam. 485 et seq.; Burt v. Dewey, 40 N. Y. 283, 100 Am. Dec. 482; California Dry Dock Co. v. Armstrong (C. C.) 17 Fed. 216, contra; Caproon v. Mitchell, 77 Neb. 562, 110 N. W. 378.

[3] In view of another trial, we suggest that we can see no reason why, if the evidence is such as to authorize a recovery by appellee of the purchase price paid for the engine, he may not have judgment for the balance due upon the judgment of the bank against him, with a condition that no execution shall issue for the satisfaction thereof until he files with the clerk a proper receipt or certificate of the clerk of the court in which the judgment was rendered showing that he has paid or satisfied the same. This would satisfy the rule that appellee can only recover, as damages, the amount actually paid by him, and enable him without the necessity of another suit to recover such amount when he shall have paid or satisfied the same. 23 Cyc. 794; Mutual Life Ins. Co. v. Gorman (Ky.) 40 S. W. 571. We see no reason why, in a proper case, such a judgment could not properly be rendered under our liberal practice. This, however, would not apply to the recovery of damages to the tenants' share of the rice crop, the objection to which rests upon the additional ground that this liability is altogether contingent and unliquidated.

[4] We understand the law to be that, if the engine was entirely worthless for the purpose for which it was known to the seller to have been intended, and that the purchaser as soon as he discovers this fact promptly notifies the seller and tenders back the property, he would be entitled to rescind the contract and recover back the purchase money paid, and have such notes as are still in the hands of the seller canceled, and also to recover, under certain circumstances, such consequential damages as he has suffer-

ed, by reason of the breach of the warranty, express or implied, and which were in the contemplation of the parties at the time of the sale. If the engine in the present case was not tendered back to appellant promptly upon discovering its unfitness in case of a breach of the warranty, the measure of damages would be the difference between the market value of this engine and the market value of such an engine as this one was represented to be, together with such consequential damages. We make these suggestions in view of another trial.

[5] The evidence disclosed that appellee had contracted with E. Willey to furnish him water to water 68 acres of land in consideration of which Willey was to pay him two sacks of rice per acre. He had also rented to said Willey 52 acres, to Willie Lewis 43 acres, and to Jerome Burton 40 acres, agreeing to furnish them also seed and water for the rice crop in consideration of which they were to pay him one-half of the rice raised on the land. Appellee sued for and recovered judgment for the damage to the entire crop, both his share and that of his tenants, upon the allegations and proof that he had become liable to them for such damages by reason of his contract with them to furnish water. The right is based upon the naked fact of such contingent liability. Appellee was not entitled to recover damages for the loss of the rice crop of his tenants and of Willey on the land for which appellee was to furnish water and the court erred in holding otherwise. If he had actually paid this damage, upon such evidence as would show that the amount paid was such as he was in law bound for, and that, further, that such damages were in contemplation of the parties at the time of making the contract between himself and appellant he would be entitled to recover it. Burt v. Dewey, and other cases cited, supra.

[6, 7] It is further insisted by appellant that there was such variance between the pleadings and proof that the jury should have been instructed to return a verdict for appellant. We are inclined to think that there is much force in this contention. Appellee sued upon a verbal contract wherein certain representations and warranties were made, and, when appellant set up the written contract answered that he had signed it in ignorance of its contents, that he was practically blind, and had been fraudulently imposed upon by appellant's agent. The court submitted to the jury only the issues arising upon the written contract, eliminating the charges of fraud. It would be well upon another trial for appellee to amend his petition so as to meet this objection. Colorado Canal Co. v. McFarland, 94 S. W. 400; Morris v. Kasling, 79 Tex. 141, 15 S. W. 226, 11 L. R. A. 398. We hardly think this defect is cured by the pleadings of defendant wherein the written contract is set out in full. An omission in the plaintiff's pleadings may be cured by the allegations of defendant, but this is not a mere omission to be thus cured. We suggest, also, that upon another trial the petition should by proper allegations show the cost of gathering and preparing for market of the additional crop which would have been raised on the land if water had been furnished, in order to show the amount of damage appellee is entitled to recover, if any. The point is made by the fourteenth and fifteenth assignments of error.

[8] It was permissible to show the amount of horse power capable of being developed by the engine, a gasoline engine, by showing that a 15 horse power steam engine developed as much power as was shown by the gasoline engine sold for 50 horse power. Of course, any difference between the two kinds of engines might be shown in this particular, the whole to be considered by the jury in determining the real amount of horse power of the gasoline engine, the real matter in issue. Employés of appellant testified to the result of scientific tests as to this matter, but appellee was not bound to accept their testimony. Other errors assigned will not occur on another trial. We think that what we have said is sufficient by way of reasons for the reversal of the judgment.

For the errors indicated, the judgment is reversed and the cause remanded.

Reversed and remanded.